IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

BETTY JO DECKER, etc.,

                        Plaintiff,                    Case No. 3:03 CV 7639

          -vs-

                                          MEMORANDUM   OPINION

OGLEBAY NORTON MARINE
SERVICES COMPANY, LLC,

                        Defendant.

KATZ, J.

## I. Introduction

This is a seaman's wrongful death action under federal maritime law, brought by Betty Joe Decker ("Plaintiff"), the widow and personal representative of Richard Decker ("Decedent"), against Decedent's ship-owner-employer, Oglebay Norton Marine Services Company, LLC ("Defendant"), alleging negligence under the Jones Act, 46 U.S.C. § 688, and unseaworthiness of the vessel under general maritime law.  The matter is before the Court on Defendant's motion for summary judgment (Doc. 45).  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II. Background

The facts of this case are sad and unfortunate.  On July 18, 2002, Decedent suffered a fatal heart attack aboard the *M/V Fred R. White Jr.* while the vessel was docked at the Sterling fuel dock in Windsor, Ontario, Canada.  Decedent was a seasoned sailor, who had served aboard

the *M/V Fred R. White Jr.*, since 1979, attaining the rank of bos'n and remaining on the ship despite a crew reduction sometime before July of 2002.

The exact nature and extent of the voyage upon which Decedent died is not indicated by the parties; however, because it is the activities in which Decedent engaged twenty-four hours prior to death that Plaintiff's expert alleges to have caused Decedent's fatal heart attack, that is the only time period at issue.

At an unspecified time on the day before Decedent's death, July 17, 2002, the *M/V Fred R. White Jr.*, took on sandblasting materials in Lorain, Ohio, where Decedent was offered the chance to disembark. Lorain was Decedent's home port and it is customary for sailors to be offered the opportunity to leave when in their vicinity of origin. Decedent declined to leave in order to qualify for overtime work. He was then required to help move 2,500 pounds of sandblasting sand. Plaintiff notes that the ship's captain said "young deckhands" were normally utilized for this job. During and after his involvement in moving the sand, crewmates noted that Decedent looked "exhausted."

The ship moved from Lorain to Cleveland, Ohio, where Decedent's assistance was again required to help move incoming supplies; the precise hour of this exercise is unclear. The parties also fail to indicate how much time elapsed between loading in Cleveland and docking in Windsor, Ontario; however, it appears that Decedent spent around four hours cleaning the boom and cargo holds on the vessel while en route.

Sometime on July 18, 2002, the vessel arrived in Windsor. Decedent was asked to help moor the vessel at the fuel dock and he subsequently undertook rinsing two cargo holds.

2

Plaintiff alleges that union regulations and Defendant's company policy required two persons to be present for rinsing; Plaintiff alleges that Decedent was working alone. Plaintiff took hold of the hose in preparation for rinsing. Before the water pumped through the hose, however, Decedent suffered a heart attack and died.

## III. Standard of review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material

in support of its position.  *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party."  *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).  However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact."  *Williams*, 154 F. Supp. 2d at 1071.  The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried."  *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999).  Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**IV. Discussion**

Plaintiff asserts the doctrine of seaworthiness and federal Jones Act violations as bases for recovery.  Because Plaintiff cannot show that Defendant's acts or omissions proximately caused Decedent's death, or that Defendant owed Decedent a duty to protect against his injury (because it was unforeseeable), she cannot meet the burden of showing negligence under either claim.

## A. Unseaworthiness claim

Under the doctrine of seaworthiness, "[a] ship owner is strictly liable for personal injuries [proximately] caused by his or her vessel's 'unseaworthiness.'"  *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 904 (6th Cir. 2006) (citing *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960).  Accordingly, a claim for unseaworthiness is composed of two distinct elements:  1) a showing that the vessel was unseaworthy in some way, and 2) a showing that the unseaworthy condition proximately caused Plaintiff's injuries.  *Id.* (citing *Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450, 1463-64 (6th Cir. 1993)).

### 1. Unseaworthy condition

> A vessel is unseaworthy if the vessel and its appurtenances are not "reasonably fit for their intended use."  *Mitchell*, 362 U.S. at 550.  Defective gear, an unfit or understaffed crew, or the use of an improper method of storage or unloading cargo all render a vessel unseaworthy.  *Morales v. City of Galveston*, 370 U.S. 165, 170 (1962) . . . .  Generally unseaworthiness is a question of fact for the jury and should not be resolved by the district court as a matter of law.  *See Cook v. American S.S. Co.*, 53 F.3d 733, 742 (6th Cir. 1995).

*Churchwell*, 444 F.3d at 904.  As the foregoing statement of law indicates, the scope of unseaworthiness is quite broad, extending to many conditions that impact the operation of the vessel.  In this case, Plaintiff suggests that the *M/V Fred R. White Jr.* was unseaworthy because:

1) Defendant failed to intervene in Decedent's performance of job duties despite the fact that he

was allegedly exhausted; 2) the ship was understaffed; and 3) Decedent was allegedly

accomplishing a two-person job alone at the time of his death.  While this Court could consider

the latter two bases to relate to the ship's seaworthiness, the first seems irrelevant because

Plaintiff has failed to suggest how Decedent's physical state impacted the condition and

functioning of the vessel.  Consideration of Decedent's physical difficulties is, therefore,

deferred until the Court's Jones Act analysis, under which Plaintiff raises mirror arguments.

In light of the minimal showing necessary to meet the seaworthiness prong, this Court

accepts the understaffed condition of the vessel and Decedent's sole undertaking of a two-

person job as sufficient to reach the issue of causation.

### 2. Proximate cause

"To prevail on an unseaworthiness claim, a plaintiff must establish that a vessel's

unseaworthy condition was the proximate cause of his or her injuries." *Id.* (citing *Miller v. Am.*

*President Lines, Ltd.*, 989 F.2d 1450, 1463-64 (6th Cir. 1993)).  "[U]nseaworthiness proximately

causes an injury if it play[s] a substantial part in bringing about or actually causing the injury

and the injury was either a direct result or a reasonably probable consequence of

unseaworthiness." *Id.* (internal quotation omitted).

Under this articulation, causation seems to embody elements of both actual and

proximate cause, the latter of which the Sixth Circuit has analyzed based on the forseeabilty of

the injuries sustained.  *See Perkins v. Am. Electric Power Fuel Supply Inc.*, 246 F.3d 593, 603

(6th Cir. 2001) (implying that an injury must be foreseeable for an unseaworthy condition to be

6

considered a proximate cause).  Thus Plaintiff bears the burden of establishing not only that the

unseaworthy conditions aboard the *M/V Fred R. White Jr.* were the cause in fact of Decedent's

injury, but also that the injury was foreseeable.

It is important to consider the injury Plaintiff is alleging here, which is not that

Decedent's heart attack arose from his job performance.  In fact, Decedent was only holding an

empty hose when his heart attack occurred.  Rather, Plaintiff alleges that the work performed the

day before made his heart attack worse than it would have been otherwise.  In fact, Plaintiff's

expert implicitly acknowledges that Decedent's heart attack was inevitable; though he goes on

to argue that Decedent might have survived if his level of activity had been less in the twenty-

four hours prior to death.  *See* Watts Aff. at 2.  Accordingly, the injury before this Court is the

exacerbating effect that Decedent's work had on a possibly otherwise imminent heart attack.

Plaintiff's broad position that Decedent may have survived if he had done less work

aboard the *M/V Fred R. White Jr.* falls short of meeting the required burden.  As previously

indicated, Plaintiff must show that Decedent's injury arose from the specific unseaworthy

conditions aboard the ship.  No argument is made and the Court finds no indication that an extra

crew member aboard the ship, or an extra deck hand assisting Decedent to rinse cargo bays

would have prevented his injury.  In fact, the basis of Plaintiff's expert's opinion is a study that,

at least in part, analyzes the effect of in-hospital activity on cardiac rupture, which appears to

show that even the most minimal level of exertion could have caused Decedent's death.  *See id.*

at Ex. B.

Even if this Court were willing to accept that the vessel's unseaworthiness contributed to Decedent's injury, Plaintiff must also show that such an injury was a foreseeable consequence of the staffing issues aboard the ship.  The slight degree of attention that Plaintiff has devoted to arguing this point is telling, and it has not been shown that any extra effort that may have been required of Defendant could have made Decedent's injury foreseeable.  *See Wooden v. Missouri Pac. Ry. Co.*, 862 F.2d 560 (5th Cir. 1989).

## B. Jones Act claim

> The Jones Act, 46 U. S. C. § 688 authorizes seamen to maintain negligence actions for personal injury suffered in the course of employment.  The Act expressly incorporates all portions of [the Federal Employers Liability Act] that modify and extend the common law as applied to actions by railroad employees. *Id.*  Thus, under the Jones Act, an employer has a duty to provide a safe workplace for its employees, and to prevail under the Jones Act a "plaintiff must show that her employer [breached this duty by] failing to provide a safe workplace by neglecting to cure or eliminate obvious dangers of which the employer or its agents knew or should have known." *Rannals*, 265 F.3d at 449-50 (citations omitted).  Once a plaintiff establishes that the employer breached his or her duty of care, however, the plaintiff need not establish proximate causation but "only show that the defendant's actions, however slight, contributed in some way toward causing the plaintiff's injuries." *Miller*, 989 F.2d at 1463 (citation omitted); *see also* 45 U.S.C. § 52 (authorizing damages where an "injury … result[s] in whole or in part from … negligence").

*Churchwell*, 444 F.3d at 907-08.  In this case, Plaintiff's Jones Act contentions mirror those raised in support of the seaworthiness claim.

### 1. Negligence

Plaintiff argues that Defendant acted in violation of union regulations and company policy by allowing Decedent to operate a spray hose by himself.

#### a. Breach of duty in negligence

8

In general, "[t]o recover [under the Jones Act, a] plaintiff must first establish 'the breach of a duty to protect against *foreseeable* risks of harm.'" *Perkins*, 246 F.3d at 599 (citing *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 437 (4th Cir. 1999) (emphasis added).  As discussed above, Plaintiff cannot establish that Decedent's injury was foreseeable.  Accordingly, general negligence principles imposed no duty on Defendant in these circumstances.

Plaintiff also implies that the captain of the *M/V Fred R. White Jr.* owed Decedent a duty to force him to "knock off" from work despite his expressed preference to remain aboard the ship for overtime.  The Court finds no support for such an apparently boundless obligation.  As noted above, Defendant had no knowledge of Decedent possibly having a heart condition.  Further, Plaintiff is unable to demonstrate that any of the work the day before Decedent's death was so exhausting that it would foreseeably cause a possible heart attack to become worse than a lighter cardiac infract.  While the work complained of by Plaintiff may have been difficult or strenuous, Plaintiff cannot show that the work done on the day before or the day of his death was dangerous, unsafe, or related to Decedent's heart attack.  *See Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 555-58 (1994) ("too much" work is not necessarily the same as work that is "too dangerous" in an FELA claim).  There was thus no obvious danger against which Defendant had a duty to warn or protect Decedent on these facts.

Plaintiff also argues that Defendant breached a paternalistic duty.  Plaintiff cites *The Iroquois*, 194 U.S. 240 (1904), to suggest that Defendant had a paternalistic responsibility to prevent Decedent's performance of tasks customarily accomplished by younger sailors.  The

9

Court disagrees that this proposition was the *Iroquois* Court's holding.  *The Iroquios* merely reinforced the common proposition that a captain must "provide proper medical treatment and attendance [for] seamen falling ill or suffering injury [in] the service of the ship. . . ."  *Id.* at 241, 242-44.

In *Mroz v. Dravo Corp.*, 293 F. Supp. 499 (C.D. Pa. 1968), the district court found that a jury could infer negligence where an employer knew of the Plaintiff's emphysema  and shortness of breath, but allowed her to work around diesel fumes and smoke.  Here, Plaintiff has not shown that Defendant had knowledge or notice of Decedent's impending injury, or that Decedent's post-heart attack treatment was inadequate.  Rather, Plaintiff's sole offering on this point involves testimony that suggests Decedent "looked exhausted" prior to his heart attack.  This evidence fails to evoke Defendant's medical duty as a matter of law.

Shipboard work is strenuous, and neither party disputes the fact that Decedent was engaged in physically demanding activity prior to his death.  The issue before this Court, however, is not whether Defendant allowed Decedent to exert himself, but rather whether a haggard appearance, by itself, could have given rise to a duty for treatment.  Since Plaintiff has failed to show, and this Court has failed to find authority for, such a duty under these circumstances, this Court concludes that such a duty did not arise.

### b. Negligent assignment

The paternalistic breach argument, as raised by Plaintiff, bears some resemblance to an allegation of negligent assignment.  To the extent that Plaintiff implies the death arose from the theory of negligent assignment, she bears the burden to show that Defendant knew or should

have known that Decedent's working conditions placed him at risk for a more extreme heart attack than he otherwise would have had. *See Urie v. Thompson*, 337 U.S. 163, 178 (1949) (construing the meaning of "negligence" under the Federal Employer's Liability Act—upon which the Jones Act is based—to require actual or constructive knowledge "that prevalent standards of conduct were inadequate to protect [plaintiff] and similarly situated employees"); *Wooden v. Missouri Pac. Ry. Co.*, 862 F.2d 560, 561 (5th Cir. 1989) (characterizing the negligence issue as whether the plaintiff presented "evidence sufficient to permit an inference that a reasonable [defendant] would have known that plaintiff's job . . . subjected him to a risk of [the impairment he ultimately suffered]").

Since Plaintiff cannot show evidence that Defendant knew or should have known of Decedent's weakening heart, the mere fact that he was permitted to engage in activities that were normally accomplished by younger sailors fails to present a valid negligent assignment claim.

## V. Conclusion

For the reasons discussed herein, Defendant's motion for summary judgment (Doc. 45) is hereby granted.

IT IS SO ORDERED.

         s/ *David A. Katz*
         DAVID A. KATZ
         U. S. DISTRICT JUDGE